UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————  )
DAVID TALBOT and                  )
JEFFERSON MORLEY                  )
                                  )
          Plaintiffs,             )
                                  )
                                  )
     v.                           )     Civil Action No. 07-0277 (RJL)
                                  )
CENTRAL INTELLIGENCE AGENCY       )
and                               )
U.S. DEPARTMENT OF STATE          )
                                  )
          Defendants.             )
                                  )
———————————————————  )

DEFENDANTS' OPPOSITION TO MOTION TO PRODUCE
AND MOTION FOR AN OPEN AMERICA STAY

Pursuant to 5 U.S.C. § 552(a)(6)(C) and the D.C. Circuit's decision in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), defendant Central Intelligence Agency ("CIA"), respectfully opposes plaintiff's motion to produce and moves this Court for a stay of this case.  Plaintiff David Talbot seeks certain records from the CIA pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a, pertaining to persons named George Joannides, David Morales and Gordon Campbell.   As explained in the accompanying memorandum of points and authorities, however, the CIA has not yet completed processing his FOIA request and will not be able to do so until December, 2007 due to extraordinary circumstances and despite diligently working on its pending FOIA backlogs.

1

Pursuant to Local Civil Rule 7(m), counsel for defendant discussed this motion with plaintiff's counsel. After discussion, plaintiff was not able immediately to take a position on the motion, but stated he probably would oppose it. A proposed order is attached.

Respectfully Submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID TALBOT and JEFFERSON MORLEY | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 07-0277 (RJL) |
| CENTRAL INTELLIGENCE AGENCY and U.S. DEPARTMENT OF STATE | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO PRODUCE AND
IN SUPPORT OF MOTION FOR AN OPEN AMERICA STAY

## INTRODUCTION

Defendant Central Intelligence Agency ("CIA"), pursuant to 5 U.S.C. § 552(a)(6)(C) and

*Open America v. Watergate Special Prosecution Task Force*, 547 F.2d 605 (D.C. Cir. 1976),

hereby moves to stay proceedings in this case. Although CIA is exercising due diligence in

responding to plaintiff's request under the Freedom of Information Act ("FOIA"), exceptional

circumstances have prevented the CIA from processing the request within the statutory time

period. In part of the FOIA, specifically 5 U.S.C. § 552(a)(6)(C), Congress recognized such

1

instances and provided for agencies to have additional time to search for responsive documents and process them while courts stay the litigation. This statutory framework is consistent with the approach taken by the D.C. Circuit in its landmark decision of *Open America v. Watergate Special Prosecution Task Force*, 547 F.2d 605 (D.C. Cir. 1976). As demonstrated below and in the attached declaration of Nancy J. Ward ("Ward Dec."), the CIA satisfies the criteria for obtaining a stay of this case while it reaches plaintiff's request in its backlog, conducts its search, and reviews the responsive documents. Since the enactment of the Electronic FOIA Amendments of 1996, the CIA has reduced its backlog of FOIA cases by over 80 percent, from 4,867 cases at the conclusion of FY1997 to 896 cases at the end of FY2006. In addition to reducing its backlog of FOIA cases in each of the past nine years, the CIA has eliminated what was previously a two-year lag in posting documents to its website and is now current. Ward Dec. at ¶¶ 32-33. The CIA currently estimates that it will be able to complete the processing of plaintiff's FOIA request by December, 2007. Ward Dec. at ¶ 38. For the reasons set out in detail below, the Court should grant CIA's request for an Open America stay.

### Factual and Procedural Background

By letter dated 7 December 2006, James Lesar, on behalf of his client, David Talbot, requested "the following records pertaining to George Joannides, David Morales, and Gordon Campbell:"

a. "All records pertaining to temporary duty (TDY) travel during the period January-December, 1968...."

b. "All photographs of Joannides, Morales, or Campbell, whether taken individually or in groups...."

Plaintiff also stated that he was "a representative of the news media" and requested that the processing of his request be expedited. Ward Dec. at ¶ 7.

By letter dated 15 December 2006, the CIA acknowledged receipt of Mr. Talbot's request and assigned it reference number F-2007-00419. The CIA's letter then informed plaintiff's attorney, "Our records indicate you have outstanding balances in the amounts of $66.50 and $300.00 from two previous FOIA requests, F-1997-02111 and F-1999-01937" (and enclosed copies of the earlier correspondence from those cases indicating the fees owed). The CIA then stated that, in accordance with its regulations, "requests and appeals on requests, referrals, or coordinations received from members of the public who owe outstanding fees for information services at this or other federal agencies will not be accepted and action on all pending requests shall be terminated in such circumstances". Accordingly, the CIA informed Mr. Lesar that it was canceling the case and that the request could be resubmitted once the balance had been paid in full. Ward Dec. at ¶ 8.

By letter dated 23 December 2006 (received by the Coordinator's office on 2 January 2007), plaintiff's counsel remitted a check payable to the Treasurer of the United States in the amount of $366.50. Ward Dec. at ¶ 9.

By letter dated 8 January 2007, the CIA acknowledged receipt of the payment for fees. The CIA's letter continued, "As stated in our 19 October 2006 and 15 December 2006 letters regarding F-2005-01949 and F-2007-00419, respectively, now that you have paid your outstanding fees, you are free to resubmit these and any other requests for information." Ward Dec. at ¶10.

By letter dated 3 January 2006 (sic), Mr. Lesar stated that he was resubmitting "the December 7, 2006 request made on behalf of David Talbot" and requested expedited treatment "for reasons specified in the original request letter." Ward Dec. at ¶ 11.

By letter dated 23 January 2007, the CIA acknowledged Mr. Lesar's 3 January letter, which was "received in this office on 12 January 2007." After informing plaintiff's counsel that the CIA would review the request and advise him if any problems were encountered or additional information was needed, the CIA addressed Mr. Talbot's request for expedited treatment. The CIA informed plaintiff that requests are handled on a "first in-first out" basis, exceptions are made to this rule "only when a requester establishes a compelling need" under the standards of CIA regulations and then explained when a "compelling need" exists. The CIA then informed plaintiff that his request did not "demonstrate a 'compelling need' under these criteria" and therefore, his request was denied. (The requester alleged no threat to life or physical safety, nor did he demonstrate that the matter, concerning records from 1968, was a matter of public urgency.) The CIA also informed plaintiff that reference number F-2007-0555 had been assigned to his 3 January 2007 request. Ward Dec. at ¶ 12.

By letter dated 21 February 2007 (and received by Information & Privacy Coordinator on 2 March 2007), plaintiff withdrew that portion of his request pertaining to Gordon Campbell. Ward Dec. at ¶ 13.

By letter dated 9 March 2007, the CIA acknowledged plaintiff's 21 February 2007 letter, withdrawing his request for records pertaining to Gordon Campbell and stated "we will not consider records on Gordon Campbell as part of this request." The CIA also informed plaintiff's counsel, with regard to that portion of the request pertaining to George Joannides, "as you know ... an earlier FOIA request on the same subject" is currently in litigation, and to the extent that

4

records released in that case are responsive to Mr. Talbot's request, they will be provided upon completion of that case. With regard to David Morales, the CIA stated items 1 and 2 of plaintiff's request will be processed in accordance with the FOIA and the CIA Information Act. The CIA also informed plaintiff's counsel that, based upon the information provided, his client was placed in the "news media" fee category, and thus will be required to pay only for the cost of reproducing released records in excess of the first 100 pages.   Id. at ¶ 14.

In the interim, on 6 February 2007, plaintiff filed a motion for a temporary restraining order with this Court, which was denied on 7 February 2007.  On 22 February 2007, plaintiff filed the "First Amended Complaint."  Id. at ¶ 15.

Current Status of Plaintiff's Request

The CIA's regulations provide for the processing of FOIA and PA requests on a first in, first out basis. 32 C.F.R. § 1900.34.  When the CIA receives a FOIA or PA request, it assigns it a reference number and places the request in a queue.  The CIA assigns a reference number to a request immediately upon receipt, even before the request is reviewed and formally accepted. Using this reference number, the CIA can then track the request from its arrival in IMS throughout CIA's processing.  The CIA uses two tracks for processing requests.  The first or complex track, contains the majority of requests and involves all requests that have to be tasked to one or more CIA directorates for search and review.  The second track contains those requests that concern previously requested information or information previously reviewed, declassified and released, or that seek information the existence of which would be a classified fact, if indeed such information existed.  Plaintiff's request, which entails records searches within components of the Directorate of Support and the National Clandestine Service (formerly the Directorate of

5

Operations) as well as Information Management Services, will require the coordination with multiple components, is properly placed in the first track. Ward Dec. at ¶30.

The CIA has treated plaintiff's FOIA request as having been accepted on the date on which the request was received by CIA's FOIA office and outstanding fees were paid—12 January 2007. At that time, the Agency had over 960 FOIA requests in various stages of processing; of these, approximately 745 remain ahead of plaintiff's request in the complex queue. Ward Dec. at ¶37.

The CIA is making all reasonable efforts to comply with the FOIA's requirements and deadlines. Regrettably, compliance with these deadlines is not always possible. The most equitable way to reduce the cases on hand and ensure that each request receives the attention it deserves is to process these requests pursuant to the first in/first out system described above. Based upon the request, the manner and level of the records search, the nature of potentially responsive documents, and the careful, multi-step review the CIA must conduct to prevent the inadvertent release of classified national security or other exempt information, and relative placement in the processing queue, the Agency's best estimate is that CIA will be able to complete processing this request by December 2007. Ward Dec. at ¶ 38.

## ARGUMENT

### I. These Proceedings Should Be Stayed Until The CIA Can Process Plaintiff's Request

Under FOIA, an agency is required to determine within twenty days' of the receipt of a request for records "whether to comply with such request[,]" and to "immediately notify the person making such request of such determination and the reasons therefor." 5 U.S.C. §

552(a)(6)(A)(i). This time limit can be extended by ten working days if the agency determines

that "unusual circumstances" exist. 5 U.S.C. § 552(a)(6)(B).

      Additionally, the FOIA specifically provides that in "exceptional circumstances" even

more time may be afforded. "If the Government can show exceptional circumstances exist and

that the agency is exercising due diligence in responding to the request, the court may retain

jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C.

§ 552(a)(6)(C).

      Effective October 2, 1997, as part of the Electronic Freedom of Information Act

Amendments ("EFOIA") of 1996, Congress amended this provision by adding the following two

subsections:

> (ii)     For purposes of this subparagraph i.e., 5 U.S.C. § 552(a)(6)(C)], the term
> "exceptional circumstances" does not include a delay that results from a
> predictable agency workload of requests under this section, unless the agency
> demonstrates reasonable progress in reducing its backlog of pending requests.

> (iii)     Refusal by a person to reasonably modify the scope of a request or arrange
> an alternative time frame for processing the request (or a modified request) under
> clause (ii) after being given an opportunity to do so by the agency to whom the
> person made the request shall be considered as a factor in determining whether
> exceptional circumstances exist for purposes of this subparagraph.

*See* 5 U.S.C. § 552(a)(6)(C)(ii), (iii). The EFOIA Amendments codified  the decision in *Open*

*America*, affirmed the proposition that courts should grant a stay to an agency where

"exceptional circumstances" are present and the agency is proceeding with due diligence to

respond to the FOIA request, and clarified that even the "predictable agency workload of

requests" constituted "exceptional circumstances" when an agency could demonstrate that it was

making progress in reducing its backlog. *See, e.g.*,H.R. Rep. No. 104-795, at 24, reprinted in

1996 U.S.C.C.A.N. 3448, 3467 (noting that the FOIA Amendments were intended to be "consistent" with the holding in *Open America*). The amendment notes that "the term `exceptional circumstances' does not include a delay that results from a predictable agency workload ... unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *See* 5 U.S.C. § 552 (a)(6)(C)(ii) (1997); Pub. L. No. 104-23 1; 110 Stat. 2422.

Significantly, the legislative history makes clear that Congress intended that the determination of "exceptional circumstances" would include consideration of non-FOIA requests and demands:

> Routine backlogs of requests for records under the FOIA should not give agencies an automatic excuse to ignore the time limits, since this provides a disincentive for agencies to clear up those backlogs. Nevertheless, the bill makes clear that a court shall consider an agency's efforts to reduce the number of pending requests in determining whether exceptional circumstances exist. <u>Agencies may also make a showing of exceptional circumstances based on the amount of material classified, based on the size and complexity of other requests processed by the agency, based on resources being devoted to the declassification of classified material of public interest, or based on the number of requests for records by courts or administrative tribunals.</u>

H.R. Rep. No. 104-795, 104th Cong., 2"d Sess., 1996 U.S.C.C.A.N. 3448, 1996 WL 532690, at 23 (Sept. 17, 1996) (emphasis added); see also H.R. Rep. 106-50, 106`h Cong., 151 Sess., 1999 WL 132731, at 13 (March 11, 1999).

In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) the United States Court of Appeals for the District of Columbia Circuit interpreted a previous version of the current 5 U.S.C. § 552 (a)(6)(C) as follows:

> In summary, we interpret Section 552 (a)(6)(C) to mean that "exceptional circumstances exist" when an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising

8

due diligence" in processing the requests. In such situation, in the language of subsection (6)(C), "the court may retain jurisdiction and allow the agency additional time to complete its review of the records." Under the circumstances defined above the time limits prescribed by Congress in subsection (6)(A) become not mandatory but directory. The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.

*Open America*, 547 F.2d at 616. Thus, "exceptional circumstances" can exist when an agency is inundated with an unanticipated volume of requests and resources are inadequate to handle that volume. "Due diligence" is shown if the agency is processing requests on a "first-in, first-out" basis. *Id.; see also Crooker v. United States Marshals Serv.*, 577 F. Supp. 1217, 1218 (D.D.C. 1983) (due diligence stay order proper when agency complying with request as quickly as possible.); *Kuffel v. United States Bureau of Prisons*, 882 F. Supp. 1116, 1127 (D.D.C. 1995) (The courts "have interpreted [section (a)(6)(C)] as excusing any delays encountered in responding to a request as long as the agencies are making a good faith effort and exercising due diligence in processing the requests on a first-in first-out basis."); *Edmond v. United States Attorney*, 959 F. Supp. 1, 3 (D.D.C. 1997) ("Courts have uniformly granted the government reasonable periods of time in which to review FOIA requests when there is a backlog.").[1] Because the CIA can demonstrate both exceptional circumstances and due diligence, the Court should stay the proceedings relating to plaintiff's FOIA request to allow the CIA to process plaintiff's request in due course.

---

[1]   Moreover, stays of substantial duration have been granted on the basis of the criteria enumerated in *Open America*. In *Summers v. Department of Justice*, 733 F. Supp. 443, 444 (D.D.C. 1990), the FBI was granted an indeterminate stay of proceedings in view of large volume of FOIA requests received by the FBI and in line to be processed.

### A.      FOIA Processing in General

The CIA Information and Privacy Coordinator, in the office of Information Management
Services, is the initial reception point for all FOIA/Privacy Act requests. Under the Coordinator's
direction and supervision, FOIA case officers review all incoming requests and address any
administrative issues, such as the payment of applicable fees, requests for fee waivers or
expedited treatment, and determine whether the request reasonably describes the information
sought. Ward Dec. at ¶ 19.

Experienced information management professionals in PIPD analyze each request and
determine which CIA components might reasonably be expected to possess records responsive to
a particular request.  PIPD then tasks the request to each relevant directorate. Frequently, PIPD
tasks the request to multiple directorates.  Because CIA's records systems are decentralized and
compartmented, each directorate must then devise its own search strategy, which includes
identifying which of its components and records systems to search as well as what search tools,
indices, and terms to employ.  The information management professionals in each component
conducting FOIA/Privacy Act searches are the same professionals searching records to support
the component's daily intelligence mission.  Ward Dec. at ¶ 20.

When a component locates potentially responsive documents, officers must review them
to determine whether they are in fact responsive to the request.  Because of the nature of a
particular records system, or the search tools, indices, or terms employed, a search may locate
many documents that are not responsive to the request.  In fact, it is not unusual for the number
of non-responsive documents retrieved to far exceed the number of responsive documents.
Ward Dec.  at ¶ 21.

The component must then carefully review those records that are responsive line-by-line to identify any information which is classified, pertains to intelligence sources or methods, or is otherwise exempt under the FOIA, and to ensure that nonexempt information is released if it is reasonably segregable. The reviewers must further determine whether information identified as classified still requires protection in the interests of national security or is such that it can be declassified and released. Thus, in evaluating responsive documents, officers must identify and segregate exempt information to avoid the inadvertent disclosure of classified information or compromising intelligence sources and methods. The process is laborious and time consuming. Ward Dec. at ¶ 22.

In the course of reviewing documents for exempt information and segregability, a component frequently identifies information that it must coordinate with or refer to another CIA component or another agency because the other component or agency originated the information or otherwise has an equity in it. This coordination and referral process itself can be quite time-consuming because other components and agencies have their own mission and FOIA/Privacy Act priorities. Ward Dec. at ¶ 23.

When all of the components (and agencies, if information is in coordination) complete their respective reviews, professionals in the Coordinator's office incorporate all of their recommendations regarding exemption, segregation, and release. The Coordinator's office then conducts a review from a corporate perspective on behalf of CIA. In this review, that office resolves conflicting recommendations, ensures that the release or withholding determinations comply with law, produces the integrated final record copy of each document, and responds to the requestor. Ward Dec. at ¶ 24.

During the corporate review, the Coordinator's office may make significant changes to initial decisions releasing or withholding information.  In response to a broad FOIA/Privacy Act request, the searches may locate many documents in many components.  When considered individually, a particular document may not indicate on its face that it contains exempt information.  Nevertheless, when reviewers consider all responsive documents in total, it frequently becomes apparent that, considered collectively, the documents reveal information exempt from release.  For this reason, the CIA cannot make final release determinations with respect to any particular document until all responsive documents have been reviewed.  Ward Dec. at ¶ 25.

Thus, the nature of the intelligence business, including the compartmentation of records and the need to protect intelligence sources and methods, renders record searches complex and information reviews multiple and exacting.  These procedures, discussed above, are time-consuming, but essential in order to avoid the inadvertent disclosure of exempt information. Ward Dec. at ¶ 26.

In responding to FOIA requests, the overwhelming majority of the CIA redactions are based on FOIA Exemptions (b)(1) and (b)(3).  By definition, an error on the part of the CIA that leads to the disclosure of such exempt information would reveal information about intelligence collection, sources, methods, or capabilities and thereby could reasonably be expected to damage this country's national security.  Accordingly, the utmost care must be given to ensuring proper and thorough review of responsive documents before they are released to a FOIA requester. Ward Dec. at ¶ 27.


**B.**    **The CIA is Currently Operating Under Exceptional Circumstances**.

12

Because of the necessary safeguards to protect classified information held by the CIA, the entire record retrieval process is very time consuming. Ward Dec. at ¶ 19-27.  First, the records systems maintained by the CIA are diverse, decentralized and compartmented. *Id.*  The records systems are designed and managed by the CIA components whose activities the records systems are designed to service. *Id*. Thus, within each component the search for records can only be undertaken by personnel with knowledge of and authorized access to, the information at issue. *Id*. Additionally, the procedures which must be followed during the review of documents, not simply a line-by-line review, but rather, a word-by-word review, are time consuming, but essential in order to avoid inadvertent disclosure of classified information. Ward Dec. at ¶26. Because the CIA must balance the protection of highly sensitive information and the legal requirements mandating the release of nonexempt information, a great deal of time and effort is expended in the review process for each request. Indeed, all of the information release responsibilities imposed on the CIA must be balanced against its duty to protect national security information.

In addition to the FOIA duties assigned to the CIA's information and release staffs, the information management professionals in each component conducting FOIA/Privacy Act searches are the same professionals searching records to support the component's daily intelligence mission.  Ward Dec. at ¶ 20.

Based on these circumstances, as well as the number of pending requests which predate plaintiffs request, CIA anticipates that it will not be able to complete the processing of CIA originated documents responsive to plaintiff's FOIA request until December, 2007.  Ward Dec. at ¶ 38.

**C.    The CIA is Exercising Due Diligence in Processing Plaintiff's Request and Is Making Reasonable Progress in Reducing Its Backlog of Pending Requests**.

During the past ten years, the CIA has undertaken and continues to undertake numerous initiatives to reorganize its information review infrastructure, implement technological improvements, and recruit, develop and retain skilled personnel to perform information review duties. All of these initiatives have been aimed in part at reducing the Agency's backlog of pending FOIA requests. Indeed, as detailed below, these efforts have met with significant success. From Fiscal Year (FY) 1999 to FY 2006, the CIA reduced its FOIA backlog on average about 15 percent annually. Ward Dec. at ¶ 28.

Because of such efforts, the CIA has been able to steadily and significantly reduce, though not entirely eliminate, its FOIA and PA backlog. The reasons for this continued backlog are twofold: (1) there has been a steady increase over the years in the number of information release demands being made on the CIA; and (2) the process of responding to FOIA and other declassification review requests in a manner which avoids inadvertent disclosure of classified information is necessarily time-consuming. Ward Dec. at ¶ 29.

The CIA's regulations provide for the processing of FOIA and PA requests on a first in, first out basis. 32 C.F.R. § 1900.34. When the CIA receives a FOIA or PA request, it assigns it a reference number and places the request in a queue. The CIA assigns a reference number to a request immediately upon receipt, even before the request is reviewed and formally accepted. Using this reference number, PIPD can then track the request from its arrival in IMS throughout CIA's processing. The CIA uses two tracks for processing requests. The first or complex track, contains the majority of requests and involves all requests that have to be tasked to one or more

14

CIA directorates for search and review.  The second track contains those requests that concern previously requested information or information previously reviewed, declassified and released, or that seek information the existence of which would be a classified fact, if indeed such information existed.  Plaintiff's request, which entails records searches within components of the Directorate of Support and the National Clandestine Service (formerly the Directorate of Operations) as well as Information Management Services, will require the coordination with multiple components, is properly placed in the first track.   Ward Dec. at ¶30.

The CIA has made significant efforts to improve its processing under the FOIA and other information statutes through continuous process improvements, technological advances, and various reorganizations. Ward Dec. at ¶ 31.

As mandated by the Electronic FOIA Amendments of 1996, CIA established a web site on the Internet located at www.foia.ucia.gov.  This site provides electronic access to frequently requested documents and educates the public about its rights under the various access laws.  As a result of increased availability of information on the Internet web site, including popular collections released under a number of information release efforts, the number of FOIA requests received can be expected to decline over time.  Consequently, CIA has increasingly focused on populating its FOIA web site as expeditiously as possible.  Although the CIA was approximately two years behind in posting documents at the beginning of FY 2006; by the end of FY 2006, the Agency was essentially current. (It takes approximately one month to identify and consolidate released documents, perform the requisite security reviews, and transfer this information to the site contractor to upload.)  Ward Dec. at ¶ 32.

The CIA's wide-ranging initiatives have enabled the Agency to significantly reduce its FOIA and PA backlog during each of the last nine years. Since the conclusion of FY 1997 when

the backlog stood at 4,867 cases, CIA has steadily reduced its backlog to the point that at the

conclusion of FY 2006, it had been reduced by over 80 percent to 896 cases. See Exhibit A.

Ward Dec. at ¶ 33.

In 2001, the General Accountability Office (GAO) prepared the first in a series of reports

on the implementation of the 1996 amendments to FOIA.  In its 2002 and 2004 reports, the GAO

noted that the CIA was "the only agency with a processing rate over 100 percent in each year for

fiscal years 1998, 1999, 2000, and 2001" and "the only agency that over the past 3 years [2000,

2001, and 2002] has consistently decreased the number of requests in its backlog of pending

requests."  Ward Dec. at ¶ 34.

Most recently, in February 2007, the GAO's Director of Information Management Issues

testified that the CIA was one of only two agencies during FY2003-2005 that had "processing

rates above 100 percent in all three years, meaning that each made continued progress in

reducing their number of pending cases."  See Exhibit B.  In fact, the CIA has demonstrated

steady progress, reducing its backlog each of the last nine years.  Ward Dec. at ¶ 35.

Moreover, the CIA has sought to reduce its FOIA backlog by reducing not only the

number of cases pending, but the time it takes to process these cases as well.  The CIA has

steadily reduced the median numbers of days that cases in the backlog at the end of each fiscal

year have been pending.  Of the 1866 cases in the backlog at the end of FY 2001, the median

number of days pending was 605 for FOIA requests and 215 for Privacy requests.  At the end of

FY 2004, the median number of days pending for the 1150 cases in the backlog had been

reduced to 349 days for FOIA requests and 127 days for Privacy requests. At the end of FY

2006, the median days of pendency for the 896 FOIA/PA cases carried over into FY 2007 was

234 and 74 days, respectively.   Ward Dec. at ¶ 36.

16

In this case, the CIA is handling plaintiff's request on the first-in, first-out basis. The CIA has treated plaintiff's FOIA request as having been accepted on the date on which the request was received by CIA's FOIA office and outstanding fees were paid--12 January 2007. At that time, the Agency had over 960 FOIA requests in various stages of processing; of these, approximately 745 currently remain ahead of plaintiff's request in the complex queue. Ward Dec. at ¶ 37.

The stay that the CIA accordingly seeks to December, 2007 to reach, search, and process plaintiff's request is well within the range of stays typically granted by this Court and other district courts. *See, e.g., Anpleton v. Food & Drug Admin.*,254 F.Supp.2d 6, 8-10 (D.D.C. 2003) (granting an Open America stay of approximately 22 months from the time the litigation was filed); *Rabin v. United States Dep't of State*, 980 F. Supp. 116, 123-24 (E.D.N.Y. 1997) (approving a stay of litigation until three years after FOIA request made); *Ohaegbu v. FBI*, 936 F. Supp. 7, 8 (D.D.C. 1996) (dismissing complaint without prejudice but retaining jurisdiction during a stay spanning three years from the date of request); *Cecola v. FBI*, 1995 WL 549066, at *2 (N.D.111. Sept. 8, 1995) (approving request for additional time of nearly six years from the date of the FOIA request); *Schweihs v. FBI*, 933 F. Supp. 719, 721-22 (N.D. Ill. 1996) (allowing the FBI three years from the filing of the lawsuit to complete processing plaintiff's FOIA request).

In sum, the significant FOIA demands made on the CIA, when coupled with non-FOIA information demands and the highly classified nature of most of the CIA's records demonstrate that the CIA faces "extraordinary circumstances" in reducing its FOIA backlog. Accordingly, because the CIA is "making a good faith effort and exercising due diligence in processing [plaintiff's] requests on a first-in first-out basis," its request for a stay to December, 2007 should

be granted. *Id*.; *see also Kuffel*, 882 F. Supp. at 1127 (finding no basis for damages for agency's failure to abide by the statutory deadline because delay was "excused by the standards enunciated in *Open America*").

## II.     Plaintiff Has Not Demonstrated Any Exceptional Need Or Urgency That Would Justify Having His Request Processed Out of Turn

Nothing in plaintiff's request or his Complaint in this Court suggests any "exceptional need or urgency" as required by § 552(a)(6)(C) to warrant denying the agency a stay under *Open America*, 547 F.2d at 616. To make such a showing, he would have to demonstrate that his life, personal safety, or substantial due process rights would be jeopardized by the failure to process the request immediately. *See Cleaver v. Kelley*, 427 F. Supp. 80, 82 (D.D.C. 1976) (plaintiff facing multiple criminal charges carrying possible death penalty in state court found to have justified jumping ahead in the line for processing). Indeed, the subject of plaintiff's request relates to events in history now several decades past. As such, plaintiff cannot show any genuine need for having his request processed out of turn. *See Cohen v. FBI*, 831 F. Supp 850, 854 (S.D. Fla. 1993). Therefore, his request should be processed according to each agency's usual procedures for handling all such requests and not on an "emergency" basis by virtue of the initiation of this litigation.

Because defendant has satisfied the statutory criteria for obtaining additional time to process plaintiff's FOIA request in the order in which it was received and plaintiff has not shown any exceptional need or urgency for requiring the agency to advance his FOIA request to the head of the queue, the Court should stay this case until December, 2007 or until defendant completes its processing of plaintiff's FOIA request, whichever comes first. To inform the Court

18

as to the CIA's progress in reaching plaintiffs request and its search and processing, defendant

suggests that the Court direct the CIA to file periodic status reports, perhaps on October 15 and

December 15, 2007, with the expectation that plaintiff will require some time to review the

materials he eventually receives and counsel could then discuss any issues and propose a

schedule for additional proceedings, if necessary.

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiff's motion to produce and grant

defendant Central Intelligence Agency's Motion for an Open America stay through December,

2007 to complete processing of plaintiff's FOIA request.

Respectfully Submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

19

20

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAVID TALBOT and          )
JEFFERSON MORLEY,         )
                          )
        Plaintiffs        )
                          )
              v.          )  Civil Action No. 07-0277 (RJL)
                          )
CENTRAL INTELLIGENCE      )
AGENCY and DEPARTMENT OF  )
STATE,                    )
                          )
        Defendants        )
_____ )


**DECLARATION OF NANCY J. WARD**
**ACTING INFORMATION AND PRIVACY COORDINATOR**
**CENTRAL INTELLIGENCE AGENCY**

     I, NANCY J. WARD, hereby declare and say:

     1. I am the Acting Chief, Public Information

Programs Division (PIPD), Information Management Services

(IMS), under the Office of the Chief Information Officer,

Central Intelligence Agency (CIA).  I also am the Acting CIA

Information and Privacy Coordinator (Coordinator).  I have

held these positions since 9 March 2007.

     2. I have served with the United States Government

for over twenty-four years and, in addition to my current

positions, have held other supervisory positions with the

CIA in the field of information review and release, including programs manager in PIPD since 1 June 2006.

3. In my capacities as Acting Chief of PIPD/IMS and Acting Information and Privacy Coordinator, I am responsible for managing the Freedom of Information Act (FOIA), Privacy Act, and Executive Order 12958[1] Mandatory Declassification Review programs in the CIA.  These responsibilities include directing searches of CIA records systems in response to public requests for information under these programs, and coordinating the reviews of any records retrieved in such searches.  These review processes include undertaking any intra-agency and inter-agency coordination and referrals necessary in light of the information found in responsive records.[2]

4.  As part of my official duties, I ensure that the CIA administratively processes FOIA and Privacy Act requests, including the search, retrieval, analysis, review,

---

[1] Executive Order 12958 was amended by Executive Order 13292, effective March 25, 2003.  See Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003).  All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292.  See Exec. Order No. 12958, 3 C.F.R. 333 (1996), reprinted as amended in 50 U.S.C.A. § 435 note at 180 (West Supp. 2006).

[2] A "coordination" occurs when a CIA-originated document contains information from another agency, and the CIA contacts that agency to obtain guidance on whether to release or withhold that agency's information.  A "referral" occurs when CIA possesses a document that originated with another agency.  In such a case, CIA transmits the document to the originating agency for a direct response to the FOIA or Privacy Act requestor.

redaction, and release of documents, in accordance with the applicable laws and regulations and as efficiently as possible with the personnel and resources available.    I also am responsible for determining whether requests for fee waivers or expedited treatment should be granted.

5.    Through the exercise of my official duties, I am familiar with plaintiff's request for information that is the subject of this civil action.  I make the following statements based upon my personal knowledge and the information made available to me in my official capacity.

6.    The purpose of this declaration is to provide a description of the CIA's process for responding to FOIA/PA requests and to explain the CIA's need for a reasonable delay to complete processing of plaintiff's request.  I will include in my explanation the additional administrative burdens imposed by the nature of both the records systems involved and the information at issue, the necessity of referring records to various CIA components as well as to other agencies to ensure that no classified information, intelligence sources and methods, or otherwise exempt information is inadvertently disclosed, and the status of plaintiff's request vis-à-vis other pending FOIA requests.

<u>PLAINTIFF'S FOIA REQUEST</u>

7.  By letter dated 7 December 2006, James Lesar, on behalf of his client, David Talbot, requested "the following records pertaining to George Joannides, David Morales, and Gordon Campbell:"

a.  "All records pertaining to temporary duty (TDY) travel during the period January-December, 1968...."

b.  "All photographs of Joannides, Morales, or Campbell, whether taken individually or in groups...." Plaintiff also stated that he was "a representative of the news media" and requested that the processing of his request be expedited.

8.  By letter dated 15 December 2006, the CIA acknowledged receipt of Mr. Talbot's request and assigned it reference number F-2007-00419.  The CIA's letter then informed plaintiff's attorney, "Our records indicate you have outstanding balances in the amounts of $66.50 and $300.00 from two previous FOIA requests, F-1997-02111 and F-1999-01937" (and enclosed copies of the earlier correspondence from those cases indicating the fees owed). The CIA then stated that,  in accordance with its regulations,[3] "*requests and appeals on request, referrals, or coordinations received from members of the public who owe*

---

[3] *See* 32 C.F.R. § 1900.11

4

*outstanding fees for information services at this or other
federal agencies will not be accepted and action on all
pending requests shall be terminated in such circumstances"*
(italics in original). Accordingly, the CIA informed Mr.
Lesar that it was canceling the case and that the request
may be resubmitted once the balance had been paid in full.

9.  By letter dated 23 December 2006 (received by the
Coordinator's office on 2 January 2007), plaintiff's counsel
remitted a check payable to the Treasurer of the United
States in the amount of $366.50.

10.  By letter dated 8 January 2007, the CIA
acknowledged receipt of the payment for fees.  The CIA's
letter continued, "As stated in our 19 October 2006 and 15
December 2006 letters regarding F-2005-01949 and F-2007-
00419, respectively, now that you have paid your outstanding
fees, you are free to resubmit these and any other requests
for information."

<u>11.</u>  By letter dated 3 January 2006 (sic), Mr. Lesar
stated that he was he was resubmitting "the December 7, 2006
request made on behalf of David Talbot" and requested
expedited treatment "for reasons specified in the original
request letter."

<u>12.</u>  By letter dated 23 January 2007, the CIA

acknowledged Mr. Lesar's 3 January letter, which was
"received in this office on 12 January 2007." After
informing plaintiff's counsel that the CIA would review the
request and advise him if any problems were encountered or
additional information was needed, the CIA addressed
Mr. Talbot's request for expedited treatment.  The CIA
informed plaintiff that requests are handled on a "first
in-first out" basis, exceptions are made to this rule "only
when a requester establishes a compelling need" under the
standards of CIA regulations and then explained when a
"compelling need" exists.  The CIA then informed plaintiff
that his request did not "demonstrate a 'compelling need'
under these criteria" and therefore, his request was denied.
(The requester alleged no threat to life or physical safety,
nor did he demonstrate that the matter, concerning records
from 1968, was a matter of public urgency.) The CIA also
informed plaintiff that reference number F-2007-0555 had
been assigned to his 3 January 2007 request.

     13.  By letter dated 21 February 2007 (and received by
Information & Privacy Coordinator on 2 March 2007),
plaintiff withdrew that portion of his request pertaining to
Gordon Campbell.


     14.  By letter dated 9 March 2007, the CIA acknow-

ledged plaintiff's 21 February 2007 letter, withdrawing his request for records pertaining to Gordon Campbell and stated "we will not consider records on Gordon Campbell as part of this request."  The CIA also informed plaintiff's counsel, with regard to that portion of the request pertaining to George Joannides, "as you know ... an earlier FOIA request on the same subject" is currently in litigation, and to the extent that records released in that case are responsive to Mr. Talbot's request, they will be provided upon completion of that case.  With regard to David Morales, the CIA stated items 1 and 2 of plaintiff's request will be processed in accordance with the FOIA and the CIA Information Act.  The CIA also informed plaintiff's counsel that, based upon the information provided, his client was placed in the "news media" fee category, and thus will be required to pay only for the cost of reproducing released records in excess of the first 100 pages.

15.  In the interim, on 6 February 2007, plaintiff filed a motion for a temporary restraining order with this Court, which was denied on 7 February 2007.  On 22 February 2007, plaintiff filed the "First Amended Complaint."

## CIA RECORDS SYSTEMS

16.  Any intelligence or security agency continually faces the risk that there may be a spy within its ranks or that it may be subject to hostile penetration.  Prudence dictates that an agency take appropriate counterintelligence and security precautions to minimize the potential damage to national security that could result from a spy in the agency's midst or the compromise of its information systems by technical means.  The CIA implements this policy by decentralizing and compartmenting its records systems. Records within the CIA are maintained by four directorates—the National Clandestine Service and the Directorates of Intelligence, Science & Technology, and Support, and the independent offices which report directly to the Director, CIA, collectively known as the D/CIA area.[4]

17.  Another way the CIA seeks to minimize such damage is strictly to limit the amount of information to which any particular employee has access.  The CIA limits employee access to information by employing a "need-to-know" policy, which provides that an employee has access only to that information required to perform the employee's duties.

18.  While the counterintelligence advantage of

---

[4] For purposes of information review and release, the D/CIA Area is treated in the same manner as a directorate.

decentralization and compartmentation are obvious, one
disadvantage is equally obvious:  inherent inefficiencies
created in the records search and retrieval processes.
These inefficiencies affect not only the day-to-day
activities of CIA employees trying to perform their mission,
but also the process of responding to FOIA/Privacy Act
requests.

### PROCESSING OF FOIA/PRIVACY ACT REQUESTS

19.  The CIA Information and Privacy Coordinator, in
the office of Information Management Services, is the
initial reception point for all FOIA/Privacy Act requests.
Under the Coordinator's direction and supervision, FOIA case
officers review all incoming requests and address any
administrative issues, such as the payment of applicable
fees, requests for fee waivers or expedited treatment, and
determine whether the request reasonably describes the
information sought.

20.  Experienced information management professionals
in PIPD analyze each request and determine which CIA
components might reasonably be expected to possess records
responsive to a particular request.  PIPD then tasks the
request to each relevant directorate. Frequently, PIPD tasks
the request to multiple directorates.  Because CIA's records
systems are decentralized and compartmented, each

directorate must then devise its own search strategy, which
includes identifying which of its components and records
systems to search as well as what search tools, indices, and
terms to employ.  The information management professionals
in each component conducting FOIA/Privacy Act searches are
the same professionals searching records to support the
component's daily intelligence mission.

21.  When a component locates potentially responsive
documents, officers must review them to determine whether
they are in fact responsive to the request.  Because of the
nature of a particular records system, or the search tools,
indices, or terms employed, a search may locate many
documents that are not responsive to the request.  In fact,
it is not unusual for the number of non-responsive documents
retrieved to far exceed the number of responsive documents.

22.  The component must then carefully review those
records that are responsive line-by-line to identify any
information which is classified, pertains to intelligence
sources or methods, or is otherwise exempt under the FOIA,
and to ensure that nonexempt information is released if it
is reasonably segregable.  The reviewers must further
determine whether information identified as classified still
requires protection in the interests of national security or
is such that it can be declassified and released.  Thus, in

evaluating responsive documents, officers must identify and segregate exempt information to avoid the inadvertent disclosure of classified information or compromising intelligence sources and methods.  The process is laborious and time consuming.

23.  In the course of reviewing documents for exempt information and segregability, a component frequently identifies information that it must coordinate with or refer to another CIA component or another agency because the other component or agency originated the information or otherwise has an equity in it.[5]  This coordination and referral process itself can be quite time-consuming because other components and agencies have their own mission and FOIA/Privacy Act priorities.

24.  When all of the components (and agencies, if information is in coordination) complete their respective reviews, professionals in my office incorporate all of their recommendations regarding exemption, segregation, and release.  My office then conducts a review from a corporate perspective on behalf of CIA.  In this review, we resolve conflicting recommendations, ensure that the release or withholding determinations comply with law, produce the

---

[5] *See* Exec. Order No. 12958, as amended, § 3.6(b), which requires that classified information located by an agency be referred to the originating agency for classification review.

integrated final record copy of each document, and respond to the requestor.

25.  During the corporate review, we may make significant changes to initial decisions releasing or withholding information.  In response to a broad FOIA/Privacy Act request, the searches may locate many documents in many components.  When considered individually, a particular document may not indicate on its face that it contains exempt information.  Nevertheless, when reviewers consider all responsive documents in total, it frequently becomes apparent that, considered collectively, the documents reveal information exempt from release.  For this reason, we cannot make final release determinations with respect to any particular document until we review all responsive documents.

26.  Thus, the nature of the intelligence business, including the compartmentation of records and the need to protect intelligence sources and methods, renders record searches complex and information reviews multiple and exacting.  These procedures, discussed above, are time-consuming, but essential in order to avoid the inadvertent disclosure of exempt information.

27.  In responding to FOIA requests, the

overwhelming majority of the CIA redactions are based on FOIA Exemptions (b)(1) and (b)(3). By definition, an error on the part of the CIA that leads to the disclosure of such exempt information would reveal information about intelligence collection, sources, methods, or capabilities and thereby could reasonably be expected to damage this country's national security. Accordingly, the utmost care must be given to ensuring proper and thorough review of responsive documents before they are released to a FOIA requester.

### FACTORS AFFECTING CIA'S FOIA BACKLOG

28. During the past ten years, the CIA has undertaken and continues to undertake numerous initiatives to reorganize its information review infrastructure, implement technological improvements, and recruit, develop and retain skilled personnel to perform information review duties. All of these initiatives have been aimed in part at reducing the Agency's backlog of pending FOIA requests.[6] Indeed, as detailed below, these efforts have met with significant success. From Fiscal Year (FY) 1999 to

---

[6]    As noted in the plan and report submitted in mid-2006 by the CIA to the Attorney General and the Director of the Office of Management and Budget in response to Executive Order 13392, the CIA indicated that "many of the requirements put forward in E.O. 13392 are already reflected in current CIA procedures" and noted that CIA "has reduced its FOIA backlog for eight consecutive years."

FY 2006, the CIA reduced its FOIA backlog on average about 15 percent annually.

29.  Because of such efforts, the CIA has been able to steadily and significantly reduce, though not entirely eliminate, its FOIA and PA backlog.  The reasons for this continued backlog are twofold:  (1) there has been a steady increase over the years in the number of information release demands being made on the CIA[7]; and (2) the process of responding to FOIA and other declassification review requests in a manner which avoids inadvertent disclosure of classified information is necessarily time-consuming.

30.  The CIA's regulations provide for the processing of FOIA and PA requests on a first in, first out basis.  32 C.F.R. § 1900.34.  When the CIA receives a FOIA or PA request, it assigns it a reference number and places the request in a queue.[8]  The CIA assigns a reference number to a request immediately upon receipt, even before the request is reviewed and formally accepted.  Using this reference number, PIPD can then track the request from its arrival in IMS throughout CIA's processing.  The CIA uses two tracks for processing requests.  The first or complex

---

[7] For example, the CIA received an average of 693 mandatory declassification review requests per year from members of the public during FY 2001-2005. In FY 2006, the CIA received 959 such requests.
[8] Privacy Act requests are included in FOIA queues and reports, because the Privacy Act requests are searched under both statutes. *See* 32 C.F.R. 1901.21.

track, contains the majority of requests and involves all requests that have to be tasked to one or more CIA directorates for search and review.  The second track contains those requests that concern previously requested information or information previously reviewed, declassified and released, or that seek information the existence of which would be a classified fact, if indeed such information existed.  Plaintiff's request, which entails records searches within components of the Directorate of Support and the National Clandestine Service (formerly the Directorate of Operations) as well as Information Management Services, will require the coordination with multiple components, is properly placed in the first track.

## CIA'S EFFORTS TO IMPROVE ITS FOIA PROCESSING

31.  The CIA has made significant efforts to improve its processing under the FOIA and other information statutes through continuous process improvements, technological advances, and various reorganizations.  Through these efforts, the CIA was able to substantially reduce its FOIA and PA backlog during each of the last nine years.

32.  As mandated by the Electronic FOIA Amendments of 1996, CIA established a web site on the Internet located at www.foia.ucia.gov.  This site provides electronic access to

frequently requested documents and educates the public about its rights under the various access laws.  As a result of increased availability of information on the Internet web site, including popular collections released under a number of information release efforts, the number of FOIA requests received can be expected to decline over time. Consequently, CIA has increasingly focused on populating its FOIA web site as expeditiously as possible.  Although the CIA was approximately two years behind in posting documents at the beginning of FY 2006; by the end of FY 2006, we were essentially current. (It takes approximately one month to identify and consolidate released documents, perform the requisite security reviews, and transfer this information to the site contractor to upload.)

33.  The CIA's wide-ranging initiatives have enabled the Agency to significantly reduce its FOIA and PA backlog during each of the last nine years. Since the conclusion of FY 1997 when the backlog stood at 4,867 cases, CIA has steadily reduced its backlog to the point that at the conclusion of FY 2006, it had been reduced by over 80 percent to 896 cases. *See* Exhibit A.

34.  In 2001, the General Accountability Office (GAO)

prepared the first in a series of reports on the implementation of the 1996 amendments to FOIA.[9]  In its 2002 and 2004 reports, the GAO noted that the CIA was "the only agency with a processing rate over 100 percent in each year for fiscal years 1998, 1999, 2000, and 2001" and "the only agency that over the past 3 years [2000, 2001, and 2002] has consistently decreased the number of requests in its backlog of pending requests."[10]

35.  Most recently, in February 2007, the GAO's Director of Information Management Issues testified that the CIA was one of only two agencies during FY2003-2005 that had "processing rates above 100 percent in all three years, meaning that each made continued progress in reducing their number of pending cases."[11]  *See* Exhibit B.  In fact, the CIA has demonstrated steady progress, reducing its backlog each of the last nine years.

36.  Moreover, the CIA has sought to reduce its FOIA

---

[9] In this and subsequent reports, the GAO examined the FOIA processing operations of "the 24 major agencies covered by the Chief Financial Officers Act, as well as the Central Intelligence Agency", which together handle approximately 97 percent of FOIA requests government-wide. U.S. Gen. Accounting Office, *Information Management: Progress in Implementing the 1996 Electronic Freedom of Information Act Amendments*, GAO-01-378 (Washington, D.C.: Mar. 16, 2001).

[10] U.S. Gen. Accounting Office, *Information Management: Update on Implementation of the 1996 Electronic Freedom of Information Act Amendments,* 36 (August 2002) and *Information Management: Update on Freedom of Information Act Implementation Status,* 35 (February 2004).

[11] U.S. Gen. Accountability Office, *FOIA: Processing Trends Show Importance of Improvement Plans,* 30 (February 14, 2007). (The final GAO report has not yet been issued.)

backlog by reducing not only the number of cases pending, but the time it takes to process these cases as well. The CIA has steadily reduced the median numbers of days that cases in the backlog at the end of each fiscal year have been pending. Of the 1866 cases in the backlog at the end of FY 2001, the median number of days pending was 605 for FOIA requests and 215 for Privacy requests.[12] At the end of FY 2004, the median number of days pending for the 1150 cases in the backlog had been reduced to 349 days for FOIA requests and 127 days for Privacy requests. At the end of FY 2006, the median days of pendency for the 896 FOIA/PA cases carried over into FY 2007 was 234 and 74 days, respectively.

## CIA'S ESTIMATED TIME FOR COMPLETION OF PLAINTIFF'S FOIA REQUEST

37. The CIA has treated plaintiff's FOIA request as having been accepted on the date on which the request was received by CIA's FOIA office and outstanding fees were paid--12 January 2007. At that time, the Agency had over 960 FOIA requests in various stages of processing; of these, approximately 745 currently remain ahead of plaintiff's request in the complex queue.

38. The CIA is making all reasonable efforts to

---

[12] As noted earlier, all Privacy Act requests are processed under FOIA as well as the Privacy Act (n.7).

18

comply with the FOIA's requirements and deadlines.
Regrettably, compliance with these deadlines is not always
possible.  The most equitable way to reduce the cases on
hand and ensure that each request receives the attention it
deserves is to process these requests pursuant to the first
in/first out system described in paragraph 30 above.  Based
upon the request, the manner and level of the records
search, the nature of potentially responsive documents, and
the careful, multi-step review the CIA must conduct to
prevent the inadvertent release of classified national
security or other exempt information, and relative placement
in the processing queue, my best estimate is that CIA will
be able to complete processing this request by December
2007.

    39.  For the above reasons, the CIA submits this
declaration in support of its request for a stay of the
proceedings to allow the CIA to process plaintiff's request
in accordance with applicable law and regulations and in an
orderly, fair manner.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __13th__ day of March, 2007.

_____
Nancy J. Ward
Acting Information & Privacy Coordinator
Central Intelligence Agency



CIA FOIA and Privacy Act
Cases Backlog
(FY 1997 - FY 2006)

Trends in Backlog of Pending Requests—Agency Processing Rate



GAO-04-257 Information Management

U.S. General Accounting Office, *Information Management: Update on Freedom of Information Act Implementation Status*, 36 (Washington, D.C.: February 2004).

Trends in Backlog of Pending Requests—Agency Processing Rate

Figure 6: Agency Processing Rate for 25 Agencies



Source: GAO analysis of FOIA annual reports for fiscal years 2002-2005 (self-reported data).

Notes: Abbreviations are as in table 2.

The agency processing rate is defined as the number of requests processed in a given year compared with the requests received, expressed as a percentage.

In 2002, FEMA data were used, and for 2003, 2004, and 2005, DHS data were used.

GAO-07-491T

U.S. General Accountability Office, *FOIA Processing Trends Show Importance of Improvement Plans*, 31 (Washington, D.C.: February 2007).

EXHIBIT B-2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DAVID TALBOT and                        )
JEFFERSON MORLEY                         )
                                        )
                Plaintiffs,             )
                                        )
                                        )
        v.                              )        Civil Action No. 07-0277 (RJL)
                                        )
CENTRAL INTELLIGENCE AGENCY             )
and                                     )
U.S. DEPARTMENT OF STATE                )
                                        )
                Defendants.             )
                                        )
_____)

ORDER

        Upon consideration of plaintiff's motion to produce, as to defendant Central Intelligence

Agency (CIA), the defendant's opposition thereto, it is hereby

        ORDERED that plaintiff's motion is DENIED, and it is further

        ORDERED that defendant's motion for an Open America Stay is GRANTED through

December 2007,  and it is further

        ORDERED that the CIA shall file periodic status reports, on October 15 and December

15, 2007.

Date:                           _____
                                UNITED STATES DISTRICT JUDGE.