UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID TALBOT, <u>et</u> <u>al</u>.           :
                                        :
        Plaintiffs                      :
                                        :
    v.                                  :      C. A. No. 07-0277 (RCL)
                                        :
CENTRAL INTELLIGENCE AGENCY,            :
    <u>et</u> <u>al</u>.                        :
                                        :
        Defendants                      :

PLAINTIFFS' OPPOSITION TO DEFENDANT CIA'S
MOTION TO STAY PROCEEDINGS AND REPLY TO
DEFENDANT DEPARTMENT OF STATE'S OPPOSITION TO
<u>MOTION TO COMPEL PRODUCTION OF NON-EXEMPT RECORDS</u>

<u>Preliminary Statement</u>

This suit arises under the Freedom of Information Act, 5
U.S.C. § 552, is brought by two veteran journalists, David Talbot
("Talbot") and Jefferson Morley ("Morley").   As initially
submitted, Talbot's request to the Central Intelligence Agency
("CIA") sought

>           a.   All records pertaining to temporary
>           duty (TDY) travel during the period January-
>           December, 1968, including but not limited to
>           all Current Residence and Dependency Reports.

and

>           b.   All photographs of George Joannides,
>           David Morales, or Gordon Campbell, whether
>           taken individually or in groups, including any
>           photographs in disguise.

<u>See</u> Complaint, Exh. 1.   Talbot later dropped his request for
records pertaining to Gordon Campbell.

2

Morley's request to the Deparatment of State ("DOS" or "State") sought "all passport and visa records pertaining to Mr. George Joannides for the years 1963-1964 and 1967-1968." See Complaint, Exh. 4. Morley, too, later dropped their request for records pertaining to Gordon Campbell.

In a Joint Status Report filed June 15, 2007, the parties briefing schedule under which defendants would file dispositive motions on August 6, 2007. However, on June 16th, plaintiffs filed a motion to require defendants to produce all nonexempt documents by July 22, 2007. In response to that motion, the CIA moved on July 2, 2007, for a stay of proceedings until December 2007 to produce any nonexempt documents. It also opposed plaintiffs' motion.

On July 16, 2007, State file an opposition to plaintiffs' motion but at the same time released some nonexempt records. Plaintiffs respond first to the CIA's motion for an Open America stay, then to State's opposition to their motion to produce.

**ARGUMENT**

**A.  The CIA Has Not Justified a Stay of Proceedings**

The CIA has moved this Court to stay proceedings in this case until December 2007 pursuant 5 U.S.C. § 552(a)(6)(C) to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C.Cir. 976). The CIA has not made the requisite showing to justify a stay of proceedings.

3

First, the CIA did not provide Talbot with the written notice of "unusual circumstances" specified in 5 US.C. § 552 (a)(6)(B)(i), and thus is not entitled to a stay of proceeding for that reason.

Second, the FOIA permits an extension of time only where an agency can show it faces "exceptional circumstances." Open America v. Watergate  Special Prosecution Force, 547 F.2d 605 (D.C.Cir. 1976),held that "'exceptional circumstances exist' where an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." Id., at 616.

"Exceptional circumstances," as thus defined, do not exist here.  The CIA is not "deluged with a volume of requests for infor-mation vastly in excess of that anticipated by Congress . . ." Rather than being deluged by an increase in requests, over the past nine years the number of requests received by the CIA has steadily steadily decline.  6,121 requests in Fiscal Year ("FY") 1998, it received only 2,500 requests in FY 2007, which is barely 40% of the number it received nine years ago.  See Chart I attached to Decla-ration of James H. Lesar ("Lesar Decl.").

In 1996 Congress passed the Electronic Freedom of Information Act ("EFOIA"), which amended subsection (6)(C) to provide in sub-paragraph (ii) that "the term 'exceptional circumstances' does not

4

include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). This was clearly intended to put pressure on agencies to end their backlogs. But despite the fact that the number of FOIA requests has dramatically declined by approximately 60%, the CIA's backlog still persists.

Although the CIA's progress in reducing its backlog may have been reasonable in the three years immediately following passage of the EFOIA, its progress has not been reasonable in recent years. This is made clear by comparing the relevant figures for the first three years after implementation of the EFOIA began with the figures for the last three years. For the period comprising FY 1998 through FY 2000, 15,426 requests were received and processing of 17,884 was completed. Thus, during this three-year period, the CIA completed 2,458 more requests than it received. See Chart II to Lesar Decl. By contrast, for the period comprising FY 2004 through FY 2006, the CIA received 8,490 requests and completed processing of only 9,025 requests, a mere surplusage of 535 more requests processed than received.

In short, although the workload which the CIA confronted in 2004-2006 was reduced by approximately 45% over what it had been in 1998-2000, it's reduction in backlog was only 22% of what had occurred during the earlier period. There is no way this constitutes reasonable progress in reducing the CIA's backlog. Indeed, it is apparent that but for the dramatic reduction in the number of

5

requests being received by the CIA, there might have been no reduction in its backlog at all.

Even more stunning is the fact that this decline in productivity comes despite the efficiencies in processing which the CIA has instituted in recent years as detailed in the Declaration of Nancy J. Ward ("Ward Decl.") which it has submitted.

It must be noted that the statistics which the CIA has put before the Court are out of date insofar as an accurate picture of the CIA's current backlog is concerned.  The Ward Declaration was executed on March 13, 2007, <u>four months ago</u>.  The last accounting it gives of its backlog is the FY 2006 figure, which dates to September 30, 2006.  Thus, it is now nearly <u>10 months out of date</u>.

Finally, analysis of the figures provided by the CIA makes it clear that an extension to December 1, 2007 is wholly unwarranted. As of the end of FY 2006, the CIA says it had 896 requests backlogged.  In FY 2006, it completed processing on 2,579 requests. Given that processing rate--approximately 215 requests processed per month, the backlogged requests pending at the end of FY 2006 should have all been processed by February 2007, and any new requests received between the end of FY 1996 and the receipt of Talbot's request should have been processed by June 2007.  The December 2007 extension for providing the records requested by Talbot does not mesh with the facts and figures provided by the CIA or by its claim that it is making "reasonable progress" in reducing its backlog.

6

Accordingly, the CIA's motion to stay proceedings should be denied and it should be provide all nonexempt records within the next 30 days.

**B.    The State Deparatment's Response**

The State Deparatment has released some nonexempt materials responsive to Morley's request, but there may be more.  It has not searched for records under code names, pseudonyms, and aliases, for example.  George Joannides use of "Howard" and "Walter Newby" as pseudonyms has been officially released, thus there is no justification for not searching under these names for relevant records.  The State Department should be ordered to release any additional nonexempt records it may have.

Respectfully submitted,

DATED:  July 19, 2007

JAMES H. LESAR #114413
1003 K Street, N.W.
Suite 204
Washington, D.C. 20001
Phone:  (202) 393-1921

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID TALBOT, et al.                    :
                                        :
        Plaintiffs                      :
                                        :
    v.                                  :        C. A. No. 07-0277 (RCL)
                                        :
CENTRAL INTELLIGENCE AGENCY,            :
    et al.                              :
                                        :
        Defendants                      :


### DECLARATION OF JAMES H. LESAR

I, James H. Lesar, declare and say as follows:

1.  I am attorney for the plaintiffs in the above-captioned cause of action.

2.  Attached hereto are two charts which I have compiled from information contained in the annual reports which defendant Central Intelligence Agency has submitted to Congress regarding its implementation of the Freedom of Information Act.  These reports are available on the CIA's web site, www.foia.cia.gov/txt/annual report_ (year).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of July, 2007.

_____
        JAMES H. LESAR

## CHART OF CIA FOIA/PRIVACY ACT REQUESTS

| YEAR | PENDING | RECEIVED | PROCESSED | PENDING |
|------|---------|----------|-----------|---------|
| 1998 | 5,764 | 6,121 | 7,169 | 4,716 |
| 1999 | 3,703 | 5,485 | 6,225 | 2,963 |
| 2000 | 2,964 | 3,820 | 4,490 | 2,294 |
| 2001 | 2,295 | 3,255 | 3,684 | 1,866 |
| 2002 | 1,866 | 2,727 | 3,046 | 1,547 |
| 2003 | 1,547 | 3,136 | 3,252 | 1,431 |
| 2004 | 1,431 | 3,055 | 3,336 | 1,150 |
| 2005 | 1,150 | 2,935 | 3,110 | 975 |
| 2006 | 975 | 2,500 | 2,579 | 896 |
| TOTALS: | | 33,014 | 36,891 | |

Chart 1

## REQUESTS RECEIVED AND PROCESSED, 1998-2000

|        |          | RECEIVED | PROCESSED |
|--------|----------|----------|-----------|
| 1998   |          | 6,121    | 7,169     |
| 1999   |          | 5,485    | 6,225     |
| 2000   |          | 3,820    | 4,490     |
|        | TOTALS:  | 15,426   | 17,884    |

## REQUESTS RECEIVED AND PROCESSED, 2004-2006

|        |          | RECEIVED | PROCESSED |
|--------|----------|----------|-----------|
| 2004   |          | 3,055    | 3,336     |
| 2005   |          | 2,935    | 3,110     |
| 2006   |          | 2,500    | 2,579     |
|        | TOTALS:  | 8,490    | 9,025     |

## SUMMARY

Excess of Requests Processed over Requests Received:

| 1998-2006 | 3,879 |
|-----------|-------|
| 1998-2000 | 2,458 |
| 2004-2006 |   535 |

**CHART 2**