UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
                                    )
JEFFERSON MORLEY                    )
                                    )
              Plaintiff,            )
                                    )
                                    )
        v.                          )        Civil Action No. 07-0277 (RJL)
                                    )
                                    )
U.S. DEPARTMENT OF STATE            )
                                    )
            Defendant.              )
                                    )
_____    )

OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT  AND REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, the Department of State (State), respectfully submits its

Opposition to Plaintiff's Cross-motion for Summary Judgment and Reply to Plaintiff's

Opposition to Defendant's Motion for Summary Judgment (hereinafter "Response").

**The Search**

Plaintiff Morley's FOIA request to State asked for all passport and visa records

pertaining to George E. Joannides and David Morales during the years 1963- 1964 and

1967-1968.[1]  Plaintiff submitted the dates and place of birth and death of both

individuals, a social security number for Mr. Joannides and a death certificate for Mr.

_____

[1]

 Neither plaintiff Morley, not plaintiff Talbot, made a request to the CIA for passport and
visa records.

1

Morales. Grafeld Dec. at ¶11.   State independently confirmed the death of Mr.

Joannides. *Id*. at ¶ 12.

Plaintiff contends that State has not demonstrated that it conducted an adequate

search  because

1) "there is no indication in the record that State actually searched for
passports; it produced only passport applications, not copies of the
passports themselves." Response at p. 4, and

2) State's affidavit "does not state that it searched for variations of
[Morales' and Joannides'] names. *Id*.

**Passports**

No passports were found as a result of the search, because State does not retain

copies of passports.  Passport records consist of applications for United States passports

and supporting evidence of United States citizenship.  The Department does not retain

physical copies or photocopies of passport books when they are issued or returned for

renewal, and accordingly the Department's passport records would not have any such

documents from the 1960s pertaining to the subjects of the FOIA requests at issue in this

case.   Second Declaration of Margaret P. Grafeld (Grafeld 2 Dec) at ¶ 3.

**Name Variations**

**Passport records**

A search was conducted of the Department's passport records in response to the

plaintiffs' FOIA requests at issue in this case.  All searches for passport records,

including searches of retired passport files, are initiated in the Department's Passport

Information Electronic Records System (PIERS). *Id.* at ¶ 4. PIERS also serves as a

2

tracking system documenting all users of the system and all searches conducted in the system for passport records.  *Id.*

The Department's Office of Passport Services (PPT) searched PIERS using the names "George Joannides" and "David Sanchez Morales" and these individuals' dates and places of birth.  *Id.* at ¶5.  Because no records were located for the relevant time period in PIERS, which often lacks information on passport records that predate the database, PPT initiated a manual search by providing the subjects' names as well as dates and places of birth to the Washington National Records Center (WNRC).  (The WNRC stores retired passport records dating from 1925 to the present for PPT.)  *Id.*  The mid-century passport records at issue are not stored or indexed in electronic form.  *Id.*  WNRC's manual search for passport records was designed to cover all passport records retired to WNRC during or since the late 1950s.  Because of the manner in which the records are stored, the manual nature of the search, and the use of dates of birth (as well as first and last names) to verify identity, the passport search would have accounted for slight misspellings or variations in the spelling of a name and inclusion or omission of a middle name or initial.  *Id.*  Furthermore, it is not likely that the subjects' names would be misspelled in passport records, given the proof of identity required to obtain a passport and the function of a passport as itself proof of identity.  *Id.*  Based on the search conducted three passport applications pertaining to Mr. Joannides and one pertaining to Mr. Morales, which were responsive to the FOIA request, were found and submitted to plaintiff.  Grafeld Dec [first] at ¶¶ 21-23.

**Visa Records**

A search was also conducted of all of the Department's electronic databases that contain visa records.  Grafeld 2 Dec at ¶ 6.   Paper files related to visa records are retrievable only by the reference number in the electronic file; therefore there are no paper files pertaining to visa records that do not have a corresponding electronic file.  *Id.*

One visa database uses fuzzy search algorithms, and returns names with a spelling and or date of birth that is either identical or a close match to the search data.  *Id*. at ¶  7.  A search was conducted based on the names "George Joannides" and "David Morales" and "David Sanchez Morales" and the individuals' dates of birth.  Because of the fuzzy search algorithms, the database would automatically account for variations in spelling as well as the inclusion or omission of a middle name or middle initial.  *Id*.   This search returned no results that could possibly be a match for George Joannides or David Morales.  *Id.*

The other two relevant visa databases both use a literal search, and several different name spellings and dates of birth were used to ensure a thorough search (including "George Joannides"; "Joannides" with any first name and any date of birth; first name "George" and any last name that begins with "Joan" with any date of birth; and "David Morales" and "David Morales Sanchez" both with any date of birth).  *Id*. at ¶ 8.  No possible matches for George Joannides or David Morales were found, and these searches would not have produced different results based on the inclusion or omission of a middle name or middle initial.  *Id.*

**Glomar Response**

Plaintiff Morley's FOIA request asked that State's search include "a search under any code names, cryptonyms, pseudonys [sic] or aliases used by Mr. Joannides" and alleged that Mr. Joannides was a deceased former CIA officer.  Grafeld Dec. at ¶6.[2] State responded that "on national security grounds we can neither confirm nor deny the potential existence of records under, in the words of your request letter, `code name, cryptonyms, pseudonys [sic] or aliases."   Grafeld Dec at ¶ 14.

Plaintiff argues that State improperly refused to confirm or deny the existence of such records because, inter alia, "A number of cryptonyms used by Morales and Joannides have been officially released under the provisions of the President John F. Kennedy Assassination Records Collection Act of 1992 (the "the JFK Act").   Response at p. 6. Plaintiff relies on various documents assertedly from the JFK Act records and purportedly authored by CIA employees.

Assuming, solely for the purposes of this motion, that the documents are what plaintiff purports that they are, the CIA's acknowledgment of use of a cryptonym by a particular individual at a particular time is immaterial to the issues in this FOIA action against State.  For example, the fact that the CIA may have admitted the use of the cryptonym or code name "John Doe" does not establish or admit that the State Department has or could have any records that the CIA used John Doe as an alias or code name, and does not establish or admit anything relating to actions that may have been

---

[2]  Contrary to plaintiff's assertions, State has not received a FOIA request seeking any alleged cryptonym, code name, etc. records pertaining to Mr. Morales, and therefore such records are not at issue in this litigation.  In any event, defendant's response would be the same as that submitted concerning Mr. Joannides.

taken by the State Department.

The Grafeld declaration filed in support of the Department of State's motion for summary judgment noted that "Confirmation or denial of the use of cryptonyms in a **specific situation** or **type of record**, **or** with regard to a specific person, in and of itself would reveal intelligence sources and methods." Grafeld Dec. at ¶ 34. (Emphasis added.). *See also id.* ("such information would identify individuals as having a covert or clandestine relationship (or lack thereof) with the United States government **and would reveal the manner in which that relationship is conducted**"); *id.* ¶ 35 ("Simply stated, the fact of the existence or nonexistence of records evidencing a covert or clandestine interest in specific individuals **or specific types of records** is so intrinsically intertwined with intelligence sources and methods and U.S. foreign relations that this fact itself must remain classified.") (emphasis added in all cases). Plaintiff's motion addresses only the link to an individual – not to a situation, type of record, or manner of relationship – so even if there were an issue of fact as to the individual, it would not be material to the outcome of this case.

Moreover, even as to the link to an individual, plaintiff has not established whether the CIA has acknowledged whether or not the alleged aliases reported by plaintiff are the entire universe of aliases or code names purportedly used by the individuals in question. Thus, the CIA's admission that John Doe may have been used as a particular cryptonym for an individual is not an admission or acknowledgment that other aliases were or were not used. Nor does it reflect on any Department of State actions relative to travel documents of such individual. Indeed, nothing in the documents

submitted by plaintiff refers to passports, visas, or the State Department.

At issue is whether the State Department may properly refuse to confirm or deny whether the State Department maintains passport and visa records under "code names, cryptonyms, etc." or indeed has any knowledge at all of the issuance of any passports or visas in such code names, etc.   Neither plaintiff's affidavit, nor his attachments, raises a material fact which is germane to that issue.

Nothing in plaintiff's submission relates to passports, visas, or applications for such documents, nor to any operation of the State Department.  Indeed, plaintiff has submitted no evidence relating to any passport and/or visa files pertaining to Joannides or Morales by code name, etc.   Thus, the alleged disclosures by the CIA have no relevance to, and cast no doubt on, the State Department's declaration and assessment that to confirm or deny its possession of responsive documents would reveal classified information and reflect an unacknowledged covert or clandestine intelligence source, method, or activity.  Plaintiff has demonstrated no prior disclosure relating to Department of State operations.   *See Morley v.C.I.A.*, 2007 WL 4270576, *12 (D.C. Cir. 2007)  ("the previously disclosed material must be 'as specific as' the sought material. . . . Prior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure. The insistence on exactitude recognizes 'the Government's vital interest in information relating to national security and foreign affairs.'").   Therefore, Exemptions  (b)(1) and (b)(3 ) properly were invoked in defendant's *Glomar* response.

Plaintiff also argues that Exemption 3 is not properly invoked because "the DNI

7

has not filed a declaration. . . that his agency is invoking Exemption 3."   Response at p. 9.  The FOIA request in this case was made to the Department of State; therefore, State is the agency responsible for the exemptions claimed in this case. The declaration of Ms. Grafeld clearly demonstrates that State's answer to the FOIA request can reasonably be expected to lead to disclosure of intelligence methods.   Grafeld Dec at ¶¶ 26-39.   As a part of her explanation of the requirement that State protect intelligence sources and methods, Ms. Grafeld stated that the Director of National Intelligence "authorized the Department [of State] to take all necessary and appropriate measures in this case to ensure that intelligence sources and methods are protected from disclosure." *Id.* at ¶ 37. Plaintiff has offered nothing placing Ms. Grafeld's statement about the DNI's authorization in question.  Nor has plaintiff established why an affidavit from the DNI is necessary in this case.

**Exemption 6**

Plaintiff claims that exemption 6 was improperly invoked to withhold personal information pertaining to Mr. Joannides' wife, Violet Joannides.  He states that according to the Social Security Death Index, Mrs. Joannides is dead.  Response at p. 9.  Plaintiff's Response was the first indication to defendant that Mrs. Joannides is dead.  Defendant has confirmed Mrs. Joannides' listing in the Social Security Death Index and has accordingly released to plaintiff all of the information that had previously been withheld on account of Mrs. Joannides' privacy interests.  Reply Ex. A.

CONCLUSION

Therefore, plaintiff's cross-motion for summary judgment should be denied, and defendant's motion for summary judgment should be granted.

Respectfully Submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
David Talbot, et al.,           )
                                )
          Plaintiffs,           )
                                )
     v.                         )     Civil Action No.
                                )        07-0277
Central Intelligence Agency, et al.,  )
                                )
          Defendants.           )
                                )
                                )
_____)
```

## SECOND DECLARATION OF MARGARET P. GRAFELD

I, Margaret P. Grafeld, declare and state as follows:

　　　1.　 I am the same Margaret P. Grafeld who executed the declaration in this case on behalf of the Department of State dated September 20, 2007.  My previous declaration is hereby incorporated by reference into this declaration.

　　　2.　 I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the records in the case files established for the processing of the subject requests, and upon information furnished to me in the course of my official duties.  As noted in my earlier

declaration, I have read the complaint filed by the plaintiffs
in the above-captioned matter, and I am familiar with the
efforts of Department personnel to process the subject requests.

3.   A search was conducted of the Department's passport
records in response to the plaintiffs' FOIA requests at issue in
this case.  Passport records consist of applications for United
States passports and supporting evidence of United States
citizenship.  The Department does not retain physical copies or
photocopies of passport books when they are issued or returned
for renewal, and accordingly the Department's passport records
would not have any such documents from the 1960s pertaining to
the subjects of the FOIA requests at issue in this case.
Similarly, the Department's passport records do not include
evidence of travel such as entrance/exit stamps, visas,
residence permits, etc., as this information is entered into the
passport book after it is issued to an individual.

4.   All searches for passport records, including searches
of retired passport files, are initiated in the Department's
Passport Information Electronic Records System (PIERS).  PIERS
also serves as a tracking system documenting all users of the
system and all searches conducted in the system for passport
records.

*David Talbot, et al. v. Central Intelligence Agency, et al.*
*Second Grafeld Declaration*

5.    The Department's Office of Passport Services (PPT) searched PIERS using the names "George Joannides" and "David Sanchez Morales" and these individuals' dates and places of birth.  Because no records were located for the relevant time period in PIERS, which often lacks information on passport records that predate the database, PPT initiated a manual search by providing the subjects' names as well as dates and places of birth to the Washington National Records Center (WNRC).  (The WNRC stores retired passport records dating from 1925 to the present for PPT.)  The mid-century passport records at issue are not stored or indexed in electronic form.  WNRC's manual search for passport records was designed to cover all passport records retired to WNRC during or since the late 1950s.  Because of the manner in which the records are stored, the manual nature of the search, and the use of dates of birth (as well as first and last names) to verify identity, the passport search would have accounted for slight misspellings or variations in the spelling of a name and inclusion or omission of a middle name or initial. Furthermore, it is not likely that the subjects' names would be misspelled in passport records, given the proof of identity required to obtain a passport and the function of a passport as itself proof of identity.

*David Talbot, et al. v. Central Intelligence Agency, et al.*
*Second Grafeld Declaration*

6.  A search was also conducted of all of the Department's electronic databases that contain visa records.  Paper files related to visa records are retrievable only by the reference number in the electronic file; therefore there are no paper files pertaining to visa records that do not have a corresponding electronic file.

7.  One visa database uses fuzzy search algorithms, and returns names with a spelling and or date of birth that is either identical or a close match to the search data.  A search was conducted based on the names "George Joannides" and "David Morales" and "David Sanchez Morales" and the individuals' dates of birth.  Because of the fuzzy search algorithms, the database would automatically account for variations in spelling as well as the inclusion or omission of a middle name or middle initial. This search returned no results that could possibly be a match for George Joannides or David Morales.

8.  The other two relevant visa databases both use a literal search, and several different name spellings and dates of birth were used to ensure a thorough search (including "George Joannides"; "Joannides" with any first name and any date of birth; first name "George" and any last name that begins with "Joan" with any date of birth; and "David Morales" and "David Morales Sanchez" both with any date of birth).  No possible

*David Talbot, et al. v. Central Intelligence Agency, et al.*
*Second Grafeld Declaration*

matches for George Joannides or David Morales were found, and these searches would not have produced different results based on the inclusion or omission of a middle name or middle initial.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _____13th_____ day of December 2007

_Margaret P. Grafeld_

Margaret P. Grafeld



**United States Department of State**

*Washington, D.C. 20520*

NOV 2 9 2007

Case No.: 200701176

James H. Lesar, Esq.
Attorney-at-Law
1003 K Street N.W.
Suite 640
Washington, D.C. 20001

Dear Mr. Lesar:

I refer to our letter dated July 16, 2007, regarding the release of certain Department of State material under the Freedom of Information Act (Title 5 USC Section 552) on behalf of your client, Mr. Jefferson Morley.

We have re-reviewed the three documents retrieved from the Office of Passport Services, taking into account the discovery that Violet Joannides, wife of George Joannides, is deceased. We have determined that two of these documents may now be released in full, and that additional material may be released from the third document.

The material in the excised portion of the one document released in part is of such a nature that its release would constitute a clearly unwarranted invasion of personal privacy. As such, it is exempt from release under subsection (b)(6) of the Freedom of Information Act. Please note that this material does not refer to Violet Joannides, but rather to another individual whose death we have not been able to confirm (including by searching for this individual in the Social Security Death Index).

- 2 -

In the case of the document released in part, all non-exempt material that is reasonably segregable from the exempt material has been released.

Sincerely,

Margaret P. Grafeld, Director
Office of Information Programs and Services

Enclosures:
  As stated.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
                                                              )
JEFFERSON MORLEY                             )
                                                              )
                        Plaintiff,                        )
                                                              )
                                                              )
            v.                                                )          Civil Action No. 07-0277 (RJL)
                                                              )
                                                              )
U.S. DEPARTMENT OF STATE              )
                                                              )
                        Defendant.                     )
                                                              )
_____)

ORDER

       Upon consideration of the motion for summary judgment of defendant, the Department of

State, and the plaintiff's  cross-motion for summary judgment, it is hereby

       ORDERED that the defendant's motion for summary judgment is GRANTED and that

defendant Morley's complaint is DISMISSED, and it is further

       ORDERED that plaintiff's cross-motion for summary judgment is DENIED.


Date: _____                    _____
                                           UNITED STATE DISTRICT COURT JUDGE