UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID TALBOT, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Civil Case No. 07-277 (RJL) |
| | ) |
| CENTRAL INTELLIGENCE | ) |
| AGENCY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION
(September **23**, 2008)

Plaintiffs Jefferson Morley ("Morley"), a news editor and author, and David Talbot ("Talbot"), a journalist and founder of Salon.com, filed this lawsuit against the Central Intelligence Agency ("CIA") and the Department of State ("State Department"), seeking information about certain former CIA agents under the Freedom of Information Act ("FOIA"). Plaintiffs and the State Department filed cross-motions for summary judgment, which are currently pending before this Court. Because the State Department properly invoked applicable FOIA exemptions when it refused to confirm or deny the existence of records (*i.e.* a "Glomar response"), defendant's motion is GRANTED and plaintiffs' cross-motion is DENIED.

## BACKGROUND

Morley and Talbot are investigating connections between CIA operatives and the assassinations of President John F. Kennedy and Senator Robert F. Kennedy. Am. Compl. ¶¶ 2-3, 9-12, 15, 26. To this end, both plaintiffs filed FOIA requests – Talbot with the Central Intelligence Agency, Morley with the Department of State – seeking information about certain CIA agents.[1]

On January 12, 2007, Morley asked the State Department for all passport and visa records for George Joannides. Def. Statement Material Facts ("Def. Facts"), ¶ 1. Morley also requested that the State Department provide records for any "code names, cryptonyms, pseudony[m]s or aliases" (collectively, "aliases") that Joannides, a deceased former CIA officer, may have used. Id. ¶ 2. On April 23, 2007, Morley advised the State Department that the request also included passport and visa records for former CIA agent David Morales. Id. ¶ 3. The State Department provided plaintiff with four redacted passport applications – three for Joannides and one for Morales – and refused to confirm or deny the existence of records for any aliases (i.e. a Glomar response). Id. ¶¶ 6-7. The State Department later released the passport applications without redactions, but continued to assert a Glomar response as to the existence of records under any aliases. Pl. Reply Br. at 1.

---

[1] On December 7, 2006, Talbot filed a request with the CIA for "records pertaining to temporary duty (TDY) travel during the period January-December 1968" and all photographs of CIA officers George Joannides, David Morales, and Gordon Campbell. Am. Compl. ¶ 6. On August 21, 2007, this Court granted a stay of the proceedings vis-à-vis the CIA under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). The summary judgment motions currently pending before this Court thus address only Morley's request to the State Department, not Talbot's request to the CIA.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In rendering its decision, a court will draw "all justifiable inferences" in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In a FOIA case, summary judgment is warranted on the basis of an agency affidavit when the affidavit describes "the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1982)). A district court reviews the agency's use of a FOIA exemption *de novo*, but "must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *Miller*, 730 F.2d at 776 (quoting *Military Audit Project*, 656 F.2d at 738).

3

**II.   Analysis**

The "broad disclosure of Government records" required by FOIA is subject to nine exemptions. *C.I.A. v. Sims*, 471 U.S. 159, 166 (1985); 5 U.S.C. § 552(b). If disclosure of the existence or non-existence of material would cause harm under a cognizable FOIA exemption, an agency may refuse to confirm or deny the existence of records – a so-called "Glomar response." *See Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007) ("[The] Glomar response . . . is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption."). If, however, the agency has "officially acknowledged" the information sought, the agency has waived its right to invoke an otherwise applicable FOIA exemption. *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990). For the following reasons, the Court concludes that the existence or non-existence of the requested material is exempt from disclosure, and the State Department has not waived its right to assert these exemptions.

### A.  *The State Department Validly Invoked Exemptions 1 and 3*

The State Department withheld information about records using aliases of former CIA agents because the disclosure of the very existence or non-existence of that information would reveal intelligence sources and methods, and is therefore protected from disclosure under FOIA Exemptions 1 and 3. In the national security context, an agency's justification for invoking a FOIA exemption is sufficient if the agency's position, as detailed in affidavits, appears "logical" and "plausible," and is not merely conclusory. *Wolf*, 473 F.3d at 374-75; *Gardels v. C.I.A.*, 689 F.2d 1100,

1105 (D.C. Cir. 1982). The State Department's justifications for invoking Exemptions 1 and 3 are both logical and plausible in this case.

Information can be withheld under Exemption 1 if it is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [is] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 12,958[2] directs that information is "Secret" when its unauthorized disclosure "reasonably could be expected to cause serious damage to the national security." 60 Fed. Reg. 19,825, 19,826, § 1.3(a)(2) (1995). The original classifying authority must be able "to identify or describe the damage." 60 Fed. Reg. at 19,826, § 1.2(a)(4).

The State Department asserts that the existence or non-existence of the requested information is "Secret" pursuant to Executive Order 12,958, as amended, and is properly classified. To support this position, the State Department submitted the Declaration of Margaret P. Grafeld, the State Department's Information and Privacy Officer. Grafeld, who has classification authority, asserts that the existence or non-existence of records using aliases is properly classified under Executive Order 12,958 because the release of the information "could lead to the unauthorized disclosure of intelligence sources, methods, and intelligence activities." Declaration of Margaret P. Grafeld ("Grafeld Decl.") ¶¶ 1, 33. Indeed, she points out that the confirmation or denial of the use of aliases in a specific situation or type of record could threaten national security by "seriously damag[ing] the ability of the United

---

[2]   As amended by Exec. Order No. 13,292, 68 Fed. Reg. 15,315 (2003).

States to conduct covert intelligence-gathering activities, vital to the conduct of foreign affairs and the defense of the nation, by undermining their necessarily covert nature." *Id.* ¶ 34. The Court agrees. Therefore, because the disclosure of the very existence or non-existence of this material would damage national security, it is properly classified as "Secret" under Executive Order 12,958, and the State Department properly refused to confirm or deny the existence of the records under Exemption 1.

In addition, the State Department contends that the information plaintiff seeks is exempt from disclosure under Exemption 3. Again, the Court agrees. Exemption 3 allows information to be properly withheld if it is "specifically exempted from disclosure by statute . . . , provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). One such statute is 50 U.S.C. § 403-1(i)(1), which provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." *See Sims*, 471 U.S. at 167; *Associated Archives and Research Ctr. v. C.I.A.*, 334 F.3d 55, 58 (D.C. Cir. 2003) (a statute requiring the CIA director to "protect intelligence source and methods from unauthorized disclosure" meets the criteria of Exemption 3). This statute applies to materials that "can reasonably be expected to lead to unauthorized disclosures of intelligence sources and methods." *Gardels*, 689 F.2d at 1103. As outlined above, the Grafeld Declaration provides substantial evidence that even the confirmation or denial of the use of aliases in State Department records could reveal intelligence sources and

methods, which are specifically exempt from disclosure pursuant to 50 U.S.C. § 403-1(i)(1). Thus, the State Department's use of Exemption 3 is also proper.[3]

### B. The Requested Information Has Not Been "Officially Acknowledged"

Not surprisingly, plaintiffs contend that even if the State Department properly applied Exemptions 1 and 3, these exemptions can be overcome because the information plaintiffs seek has already been officially disclosed. Unfortunately for them, that is not the case here. How so?

Disclosure of information that has been "officially acknowledged" can be compelled even over a valid exemption claim. *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990). For requested information to be "officially acknowledged," however, it must: (1) be as specific as the information previously released; (2) match the information previously disclosed; and (3) have been made public through an official and documented disclosure. *Id.* In addition, the official disclosure must have been made by "the agency from which the information is being sought." *Frugone v. C.I.A.*, 169 F.3d 772, 774 (D.C. Cir 1999). These requirements are not met here.

Plaintiffs contend that the records in question must be released because the CIA disclosed their existence when it officially released a number of aliases used by Morales and Joannides under the provisions of the President John F. Kennedy Assassination Records Collection Act of 1992 ("JFK Act"). That, of course, is not good enough. Mention by the CIA of a passport using an alias does not establish the

---

[3] The statute requires the Director of National Intelligence ("DNI") – not the State Department – to protect intelligence sources and methods. The DNI did exactly that when he requested the State Department take all necessary and appropriate measures to ensure the protection of intelligence sources and methods. Grafeld Decl. ¶ 37. This material is therefore specifically exempted from disclosure by statute.

existence or non-existence of State Department records under that alias. Indeed, one agency's acknowledgement of a document (no matter its origin) does not constitute an official disclosure sufficient to negate the other agency's invocation of a FOIA exemption. *See Frugone*, 169 F.3d at 774.

Furthermore, even assuming that information released under the JFK Act was "officially acknowledged," the State Department's motion must still be granted. The plaintiffs request *all* the aliases used by Joannides and Morales, including, but not limited to, those that were released under the JFK Act. Such a broad request has neither the specificity, nor the sameness, required by *Fitzgibbon*, 911 F.2d at 765. Simply stated, because the plaintiffs are seeking from the State Department more information than was publicly released by another agency (as part of the JFK Act or otherwise), the Department's asserted exemptions apply, and plaintiffs' request must be denied.

## CONCLUSION

For the foregoing reasons, the State Department's motion for summary judgment is GRANTED and plaintiffs' cross-motion for summary judgment is DENIED. An Order consistent with this ruling accompanies this Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge